21-08510MB

## ATTACHMENT A

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Special Agent David Neill, being duly sworn, depose and state as follows, to wit:

### PRELIMINARY BACKGROUND INFORMATION

1. Your affiant, David Neill, is a Special Agent of the FBI and is currently assigned to the Tucson office. In the course of his official duties, your affiant is responsible for investigating federal crimes occurring within the District of Arizona, which include violent crimes. Your affiant has training and experience in investigating such crimes.

2. The statements contained in this Affidavit are based on my experience and background as a law enforcement officer and on information provided by other law enforcement agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. I make this affidavit in support of an application for a search warrant for a warrant and order pursuant to Fed. R. Crim. P. 41 and 18 U.S.C. §2703(c)(1)(A) authorizing agents of the Federal Bureau of Investigation (FBI) to ascertain the physical location of cellular telephone number (480) 845-8555, believed to be utilized by Roy Guadalupe Marquez QUEZADA, and serviced by SPRINT PCS. (hereinafter referred to as "TARGET DEVICE") including but not limited to E-911 Phase II data (or other precise location information) concerning TARGET DEVICE (the "Requested Information")[2] for a period of thirty (30) days, and will lead to narcotics

---

[2] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Device at the start and end of any call.

-4-

1  trafficking interdiction, firearms trafficking interdiction, interdiction of the
2  smuggling of illegal aliens, and the identification of other criminal associates.

4. I have probable cause to believe that evidence of violations of Title 18 United States Code § 554, Illegal Export of Firearms, Title 18 United States Code § 924(c), Possession in Furtherance of a Drug Trafficking Crime, and Title 21 United States Code §§ 841 & 846, Conspiracy to Possess with Intent to Distribute a Controlled Substance is located in and within the aforementioned accounts described below. I have reason to believe that the member accounts that are the subject of the instant application will have stored information and communications that are relevant to this investigation. Thus, as outlined below, and based on my training and experience, there is probable cause to believe that evidence, fruits and/or instrumentalities of the aforementioned crimes are located in these accounts.

**STATUTORY AUTHORITY**

5. This investigation concerns alleged violations of Title 18 United States Code § 554, Illegal Export of Firearms, Title 18 United States Code § 924(c), Possession in Furtherance of a Drug Trafficking Crime, and Title 21 United States Code §§ 841 & 846, Conspiracy to Possess with Intent to Distribute a Controlled Substance. This court has jurisdiction over these offenses, because the below-described events occurred within the confines of the District of Arizona.

6. The facts that establish the probable cause necessary for issuance of the Order are personally known to me, are contained in official government or business records I have reviewed; or have been told to me directly by other members of the investigative team, which includes federal, state, or local law enforcement officers with whom I have worked on this investigation. As this affidavit is submitted for a

- 5 -

limited purpose, it does not contain all aspects of this investigation, but only sufficient information to establish probable cause in support of the issuance of the requested Order.

## STATEMENT OF PROBABLE CAUSE

7. The United States, including the Federal Bureau of Investigation ("FBI") is investigating allegations that cartel members and associates, including Serafin JIMENEZ, here after referred to as JIMENEZ, and Roy Guadalupe Marquez QUEZADA, here after referred to as QUEZADA, as well as members and associates of Cartel De Noreste ("CDN"), who are conspiring with each other, and other individuals yet unknown, to transport and distribute controlled substances, namely methamphetamine, and firearms to United States border cities. The firearms are being used in furtherance of drug trafficking in the United States and Mexico and are being transported into the Republic of Mexico. The investigation has revealed QUEZADA has used cell phones to conduct a narcotics transaction and a firearms transaction in furtherance of drug and firearms-trafficking activity in the District of Arizona. JIMENEZ is currently negotiating with a FBI Undercover Employee (UCE) to conduct another transaction in the District of Arizona, and QUEZADA will participate in the delivery of the narcotics and firearms.

8. There is evidence that information concerning the ongoing use and location of QUEZADA's cell phone ("TARGET DEVICE") will provide evidence of a criminal offense, namely Title 18 United States Code § 554, Illegal Export of Firearms, Title 18 United States Code § 924(c), Possession in Furtherance of a Drug Trafficking Crime, and Title 21 United States Code §§ 841 & 846, Conspiracy to Possess with Intent to Distribute a Controlled Substance (the Subject Offenses).

9. The FBI is aware that JIMENEZ, QUEZADA, and other coconspirators of the CDN and rival cartels are distributing methamphetamines and firearms to various cities located on the United States border in order to transport the contraband to cartel members in Mexico.

10. Previously, at the direction of the FBI, with information obtained from an FBI confidential source (CS), an UCE purchased approximately 732.5 grams of methamphetamine from JIMENEZ and his co-conspirators on or about November 12, 2020 in Phoenix, Arizona. Both the UCE and CS communicated with JIMENEZ, utilizing a cellphone with a Phoenix area code, in order to set up and coordinate the transaction. A number of these calls were recorded. While conducting the narcotics transaction, the UCE received a telephone call from an individual later identified as Roy Guadalupe Marquez QUEZADA, here after referred to as QUEZADA, who was using telephone number (480) 845-8555, here after referred to as TARGET DEVICE. QUEZADA advised that he was calling on behalf of JIMENEZ and advised that he had approximately ½ kilogram of methamphetamines and would be driving a Chrysler 300. The above-described telephone call was recorded. A short time later, QUEZADA arrived in a Chrysler 300 with Arizona Registration and provided the UCE with methamphetamine. A second transaction, also coordinated through and by JIMENEZ, was conducted on the same date to obtain an additional approximately ½ kilogram of methamphetamine. The above-described transactions occurred in Phoenix, Arizona within the District of Arizona.

11. On or about January 14, 2021, the FBI, through CS initiated another transaction with JIMENEZ. In an unrecorded call, JIMENEZ told CS that he would deliver firearms and narcotics in San Antonio, TX on or about February 23, 2021. During the unrecorded call, CS informed JIMENEZ that the firearms would be provided to the CDN in the Republic of Mexico. On or about January 19, 2021 and January 27, 2021, in subsequent text message conversations, CS and JIMENEZ, discussed the

delivery. Text messages received from JIMENEZ confirmed the intended delivery. The UCE, and JIMENEZ using a cell phone, also engaged in a series of telephone calls to arrange the narcotics transaction, which was intended to be transported to Texas border cities and distributed. On or about February 16, 2021, the UCE coordinated with JIMENEZ via cellphone the specifics of the controlled sale of narcotics and firearms in San Antonio, Texas. On or about February 20, 2021, the UCE, in a recorded telephone call with JIMENEZ, using the same cell phone number from previous communications, coordinated the sale of one .50 caliber firearm, five AK-47s and approximately five kilograms of methamphetamines. The negotiated price was approximately $26,500 United States Currency. The above coordinate firearms and narcotics transaction was originally scheduled to occur in February of 2021; however it was rescheduled to a later date and the location was changed to Tucson, AZ.

12. The FBI, through CS, have continued to coordinate with JIMENEZ, utilizing the same phone number, regarding the sale of narcotics and methamphetamine in Tucson, Arizona. On April 30, 2021, CS coordinated with JIMENEZ, utilizing the same phone number, via text message, to update the order and coordinate the sale of four AK-47 rifles, four AR-15 Rifles, one .50 caliber firearm, and approximately eight kilograms of methamphetamines. CS also confirmed with JIMENEZ that the transaction is scheduled to occur on or about May 18, 2021 in Tucson, AZ.

13. On or about May 4, 2021, the UCE received a missed telephone call from (480) 845-8555, TARGET DEVICE. On or about the same date, CS spoke with JIMENEZ via cell phone, who advised that JIMENEZ's "warehouse guy," who was the first individual to deliver narcotics to the UCE in Phoenix, known to Law Enforcement as QUEZADA, had tried to call the UCE, utilizing the TARGET DEVICE, as he would be delivering the firearms and narcotics to the UCE in Tucson, AZ.

14. It is believed that the TARGET DEVICE will be used to communicate with CS and/or UCE during the time of delivery, and the TARGET DEVICE may accompany or be in close proximity to the narcotics and firearms.

15. Affiant believes that GPS Data location information for the next 30 days on the TARGET DEVICE will assist law enforcement in its investigations of drug-related individuals and narcotics transactions.

16. In my training and experience, I have learned that SPRINT PCS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. Based on my training and experience, I know that SPRINT PCS can collect E-911 Phase II data about the location of the TARGET DEVICE, including by initiating a signal to determine the location of the TARGET DEVICE on SPRINT PCS network or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that SPRINT PCS can collect cell-site data about the TARGET DEVICE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as SPRINT PCS typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## Conclusion

19. Based on the preceding factual information, your affiant respectfully submits that there is probable cause to believe that ascertaining the physical location of cellular telephone number (480) 845-8555, will assist in conducting narcotics trafficking interdiction, firearms trafficking interdiction, and the identification of other criminal associates.

20. Further based upon my training and experience, and information derived from this investigation, I know that narcotics traffickers conduct their activities in areas, both public and private, at all hours of the day and night. This is in large part due to the need for traffickers to conduct their activities in a covert manner. It is therefore respectfully requested that this Court permit geolocation during both daytime and night time hours for the 30-day period of authorization.

21. In light of the ongoing investigation referred to in this affidavit, and the need to avoid any one of the adverse results enumerated in 18 U.S.C. § 2705(a)(2), it is

further requested that this affidavit be filed under seal and that notice of this warrant be delayed for a period of 30 days.

I swear, under penalty of perjury, that the foregoing is true and correct.

Respectfully submitted,

David Neill Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically on May 7, 2021

D. Thomas Ferraro
UNITED STATES MAGISTRATE JUDGE

- 11 -

Case 4:21-mb-08510-DTF Document 1-1 Filed 05/07/21 Page 9 of 9

SEARCH WARRANT RETURN (REV. 03/13)

# RETURN

CASE NO.: 21-08510MB

| DATE WARRANT RECEIVED | DATE AND TIME MONITORING BEGAN | PERIOD FOR MONITORING |
|---|---|---|
| | | |

## SERVICE OF NOTICE WITHIN 10 DAYS

SERVICE OF NOTICE OF THIS WARRANT WAS MADE WITHIN 10 CALENDAR DAYS after monitoring ended on _____, by means of:
*(date and time)*

❏ DELIVERING a copy of the warrant to _____, the person who was
*(name)*
monitored, or whose property was monitored, at _____; **OR**
*(location where service occurred)*

❏ LEAVING a copy of the warrant at _____, the person's
*(address)*
residence or usual place of abode, with _____, an individual of
*(name and age)*
suitable age and discretion, who resides at the location, and by MAILING a copy to the person's last known address of

_____.
*(last known address)*

## UNABLE TO NOTIFY

❏ SERVICE OF NOTICE OF THIS WARRANT HAS NOT BEEN MADE WITHIN 10 CALENDAR DAYS because the undersigned agent has thus far been unable to identify the person who was tracked or whose property was tracked, and the device or vehicle is registered in a fictitious identity. In the event that the identity of the person who was tracked or whose property was tracked is learned, the government will file with the Court either a Request to Delay Notification, pursuant to Crim. R. Fed. P. 41(f)(3), or a Notice of Compliance indicating the manner of service of a copy of the warrant to the person who was tracked or whose property was tracked, pursuant to Fed. R. Crim. P. 41(f)(2)(C).

## WARRANT NOT EXECUTED

❏ This Warrant was Not Executed.
*(Check this box only if the warrant was never executed, and leave the sections above blank, except for the date the warrant was received)*

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned to the designated judge.

Date: _____

_____
*(Agent's Signature)*

_____
*(Printed Name and Title)*